**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| PAUL BERRY, III, ) <br> as Next Friend of L.B., a minor, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PATTONVILLE R-III SCHOOL DISTRICT ) <br> BOARD OF EDUCATION, et al., ) <br> ) <br> Defendants. ) | Case No. 4:25-cv-00773-JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' motion for judgment on the pleadings in this case brought by Plaintiff Paul Berry, proceeding *pro se* as Next Friend on behalf of his minor daughter, L.B., against her high school and related individuals. For the reasons set forth below, the motion will be granted.

**BACKGROUND**

L.B. is a sophomore student at Pattonville High School in St. Louis County. Defendants are the Pattonville school district, its school board, and several administrators and staff of the high school. Plaintiff Berry's 106-page petition presents five general themes. First, he alleges that the district sent him an unlawful "expulsion letter" threatening to disenroll L.B. absent proof of residency. Second, he asserts that L.B. was subjected to bullying and hazing in that she was placed on the junior varsity cheer squad and not the varsity squad. Third, Berry claims that he and L.B. suffered discrimination and retaliation in the district's handling of their grievances about the cheerleading tryouts and other matters, in violation of their due process rights. Fourth, Berry contends that the Assistant Superintendent for Student Services lacked legal authority to receive and process their grievances pursuant to district policy. Fifth, Berry submits that the

district violated Missouri Sunshine Law by failing to respond to his requests for information. Based on the foregoing theories, Berry's petition asserts seven counts alleging violations of district policy, Missouri Sunshine Law, and the First and Fourteenth Amendments of the United States Constitution, all as discussed further below.

Berry originally filed this case in state court in May 2025. Defendants promptly removed the case to this Court pursuant to 28 U.S.C. § 1441(c) and later filed the present motion for judgment on the pleadings. Defendants assert that Berry has not suffered any actual injury to establish standing, has not alleged specific facts to support a constitutional violation, and has failed to assert a cognizable claim under any legal theory. Defendants urge the Court to dismiss the entire complaint with prejudice.

## DISCUSSION

### Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Magdy v. I.C. Sys., Inc.*, 47 F.4th 884, 886 (8th Cir. 2022). The court accepts the facts as true and draws all reasonable inferences in favor of the non-moving party. *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021). The complaint must plead enough facts to state a claim to relief that is plausible on its face. *Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022).

On a motion for judgment on the pleadings, matters outside the pleadings generally cannot be considered without converting the motion to one for summary judgment. *Von Kaenel*

*v. Armstrong Teasdale, LLP*, 943 F.3d 1139, 1143 (8th Cir. 2019). Exceptionally, however, courts may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned. *Id*. Accordingly, the Court considers the underlying state court file (Doc. 1-1) and exhibits filed on the record in this case.

### L.B.'s Residency (Count I)

In Count I, Berry alleges that, in April 2025, the district unlawfully threatened to expel L.B. for failing to provide proof of residency as a condition of enrollment for the next school year. He contends that the school's investigation of L.B.'s residency constitutes a violation of district code and Missouri law, Mo. Rev. Stat. § 167.020.2(1). This statute requires proof of residency at the time of registration and creates civil and criminal remedies for the provision of false information. Berry seeks declaratory and injunctive relief enjoining the district's residency verification process and requiring the district to register L.B. for the current academic year.

This claim appears to have arisen in part from a lapse in communication. Correspondence in the record shows that the district merely requested an updated lease and utility bills reflecting L.B.'s continued residency in the district. L.B.'s mother supplied that information, and the district promptly confirmed L.B.'s enrollment for the following year. (Doc. 24-2). Despite these facts, Berry continues to challenge the district's authority and procedure to verify student residency.

In their motion for judgment on the pleadings, Defendants submit that the Court lacks jurisdiction to entertain this count because there is no live case or controversy, and L.B. hasn't suffered any injury so Berry lacks standing. The Court agrees. Article III of the Constitution grants federal courts the power to adjudicate "only actual, ongoing cases or controversies."

3

*McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004). To establish Article III standing, a plaintiff must have suffered an injury in fact that can be redressed by a favorable judicial decision. *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1371 (8th Cir. 2022). When, during the course of litigation, the issues "lose their life" due to a change in circumstances and a federal court can no longer grant relief, the case is considered moot. *Id*. When a case has become moot, the court lacks jurisdiction and must dismiss the action. *Id*.

In response, Berry suggests that the mootness doctrine shouldn't apply here because the issue is likely to recur next year. This exception to mootness applies when there exists "a reasonable expectation that the same complaining party will be subject to the same action again." *Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 941 (8th Cir. 2025). But even if the district demands proof of residency again next year, there is still no injury to L.B. or unlawful conduct by the district. According to Berry, the district's annual verification process is unlawful because it's not explicitly authorized by § 167.020. The Court does not share this interpretation. The statute provides that a parent or guardian must provide proof of residency at the time of registration. Though Berry seems to believe that L.B. was registered in the district indefinitely in 2015, it is common knowledge that scholastic registration is an annual process. The statute simply defines a student's residency as that of her parent or legal guardian and establishes civil and criminal penalties for the provision of false information. The statute is silent as to *how* a district may verify residency for registration purposes, and the Court finds Pattonville's requirements – a lease and two utility bills – entirely reasonable.

The Court will grant Defendants' motion on this claim.

4

**L.B.'s Cheerleading Status (Counts II and IV)**

In Count II, Berry claims that Pattonville's high school cheerleading tryouts were rigged against L.B., resulting in her placement on the junior varsity cheer squad for 2025 after she cheered on the varsity squad in 2024. Berry offers several theories related to this grievance: (1) the coach lacked authority to set the selection criteria; (2) the coach didn't follow the selection criteria and thereby violated district policy; (3) the school refused to release the selection criteria, tryout scores, or the identity of the judges; and (4) the tryout constituted hazing and bullying against L.B. in violation of school policy. Berry seeks declaratory and injunctive relief invalidating the results of the cheerleading tryouts. Relatedly in Count IV, Berry asserts that L.B. is entitled to judicial review pursuant to the Missouri Administrative Procedures Act, § 536.150.

To make a *prima facie* case under § 536.150, "an individual must plead facts that, if true, would show that [s]he has been denied some legal right or entitlement to a privilege by an agency decision that was unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involved an abuse of discretion." *Whispering Oaks Residential Facility, LLC. v. Missouri Dep't of Nat. Res.*, 456 S.W.3d 46, 50 (Mo. App. W.D. 2015). In their motion for judgment on the pleadings, Defendants submit that L.B. has no cognizable, judicially reviewable claim because students aren't legally entitled to participate in extra-curricular activities. "Courts have long held that 'participation in interscholastic athletics is not a property right but a privilege.'" *Doe v. Ladue Horton Watkins High Sch.*, No. 4:18-CV-01637 JAR, 2018 WL 4698804, at *3 (E.D. Mo. Oct. 1, 2018) (denying relief for a high school student excluded from a soccer team, citing *State ex rel. Missouri State High Sch. Activities Ass'n v. Schoenlaub*, 507 S.W.2d 354, 359 (Mo. 1974)).

Of course, "schools may not arbitrarily allow the privilege to some and not to others," but "it is clearly not arbitrary for a school … to establish rules based on rational reasons and to apply them uniformly." *Schoenlaub*, 507 S.W.2d at 359. Relying on this caveat, Berry claims that L.B. was treated unfairly in the selection process. But his only factual pleading supporting this assertion is an allegation that, during a practice before tryouts, the assistant coach told L.B. that she would be placed on the JV squad. The Court finds this insufficient to draw the inference that Defendants arbitrarily deprived L.B. of an earned spot on the varsity cheer squad. Pattonville's district policy JFCG states that hazing does not occur when a student is required to try out for an activity when the criteria are reasonable, approved by the district, and legitimately related to the activity. Evidence in the record indicates that six independent judges scored candidates in six technical skills. (Doc. 24-3 at 2). Other criteria included appearance, attitude, citizenship, interview, grades, and paperwork. (*Id*.) The coaches had no influence in nine of the thirteen total selection criteria. (*Id*. at 4). Out of the four criteria the coaches did score, L.B. received the full point value for three of them. (*Id*.) Only 15 of 58 candidates made the varsity squad. (*Id*.) On a 100-point scale, L.B.'s score was 10 points lower than the lowest varsity score. (*Id*.) These facts squarely refute Berry's claim that L.B. was treated unfairly.

L.B. has no cognizable claim eligible for judicial review under § 536.150. Counts II and IV will be dismissed.

**Constitutional Claims (Counts III and VI)**

The complaint suggests that Berry has lodged numerous grievances with the high school on a variety of topics. Berry alleges that the school failed to properly process and address his complaints pursuant to the school's complaint resolution policy governing discrimination and harassment based on protected categories, amounting to First Amendment retaliation and a

6

violation of due process and equal protection under the Fourteenth Amendment. More specifically, Berry claims that the district violated his and L.B.'s due process rights by instructing him to submit complaints to the principal rather than the district's Director of Student Services. Berry claims that the superintendent improperly delegated authority to the principal because of Berry's race. In Count III, Berry seeks declaratory and injunctive relief requiring the district to properly process his complaints. In Count VI, Berry seeks a declaration that Defendants' actions were unconstitutional and an injunction prohibiting future violations. Defendants contend that Berry fails to state any cognizable constitutional claim. The Court agrees.

Berry does not plead any specific facts signaling protected status. The Court infers from Berry's references to "Jimmy Crow" and *Brown v. Board of Education*, 348 U.S. 886 (1954), that Berry is African American. But Berry fails to state a claim of race discrimination or a violation of due process in the school's complaint process. Berry doesn't claim that he was entirely prohibited from lodging complaints of discrimination or retaliation; he complains only that was referred to the high school principal. But district policy AC explicitly allows for complaints to be received and investigated by the Compliance Coordinator or any other administrator. (Doc. 1-1 at 59-60).  Moreover, as Defendants note, the district's complaint policies and procedures do not themselves give rise to any constitutionally protected interest. *Nelson v. Special Admin. Bd. of St. Louis Pub. Sch.*, 873 F. Supp. 2d 1104, 1111-12 (E.D. Mo. 2012).  Where no protected property interest exists, there can be no due process violation. *McDonald v. City of Saint Paul*, 679 F.3d 698, 704 (8th Cir. 2012).

Nor does Berry state a claim of First Amendment retaliation. To establish this claim, a plaintiff must prove that (1) she engaged in a protected activity, (2) the defendant took adverse

7

action that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). Berry seems to imply, without explicitly pleading so, that L.B. was threatened with expulsion and excluded from the varsity cheer squad in retaliation for his previous complaints. If this is the intended inference, Berry's accusations are unfounded, as discussed above. But more fundamentally, Berry's allegations are fatally vague and conclusory. Nowhere in his 106-page complaint does Berry identify specifically what protected speech – e.g., the content, format, place, and time – resulted in precisely what direct adverse action by Defendants. A complaint must allege specific facts sufficient to state a claim for relief that is plausible on its face. *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 953 (8th Cir. 2024). Conclusory assertions unsupported by facts do not satisfy this standard. *Id*.

The complaint is insufficient on its face, and the record belies any suggestion that L.B. suffered retaliation by expulsion or demotion as a result of Berry's grievances with the school. The Court will grant Defendants' motion as to Counts III and VI.

**Dr. Cain's Authority (Count V)**

In Count V, Berry challenges the authority of Defendant Tori Cain, Pattonville's Assistant Director of Student Services, to serve as Compliance Coordinator for purposes of receiving and processing complaints invoking legal protections. Berry posits that Dr. Cain's title doesn't exist on the district's organizational chart on its website, and the district's policy confers this authority on a different administrator in the organizational structure, so Dr. Cain's actions, as well as those of her subordinates, are null and void. In Count V, Berry seeks declaratory and injunctive relief nullifying and enjoining all actions of Dr. Cain and her staff where district policy identifies a different individual authorized to take such actions, including the processing

8

of complaints. Defendants argue that Barry lacks standing to assert this claim, which also has no legal basis.

Again here, the Court fails to see any case or controversy conferring Article III jurisdiction. To establish standing, a plaintiff must have suffered an injury in fact that can be redressed by a favorable judicial decision. *Glow In One Mini Golf*, 37 F.4th at 1371. Berry has identified no actual or conceivable injury to L.B. for the Court to remedy. District policy AC expressly allows complaints to be processed by the Compliance Coordinator or *any other administrator*. (Doc. 1-1 at 59-60).

In his response, Berry argues that the risk of injury lies in the possibility that a complaint lodged with Dr. Cain or her subordinates, or a decision rendered by them, might be deemed unenforceable. But this is not the scenario currently before the Court, nor is it sufficiently imminent to establish standing. Future harm establishes Article III standing only "if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *McNaught v. Nolen*, 76 F.4th 764, 770 (8th Cir. 2023). "If the risk is too speculative, Article III standing is lacking." *Arc of Iowa v. Reynolds*, 94 F.4th 707, 711 (8th Cir. 2024). The risk Berry describes is entirely speculative and implausible.

Absent any reason to foresee an imminent cognizable injury to L.B. flowing from Dr. Cain's position in the district's organizational chart, the declaration Berry seeks would constitute an improper advisory opinion. A federal court does not have the power to render advisory opinions or decide questions that don't affect the rights of the litigants in the case before it. *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012). "To be cognizable in a federal court, a

suit must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id*. (citing *Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

The Court will grant Defendants' motion on this count.

**Missouri Sunshine Requests (Count VII)**

Finally, in Count VII, Berry pleads that the district violated Missouri Sunshine Law by failing to provide the correct name and contact information of the school's custodian of records and failing to respond to his requests for (1) policy records of the district, high school, athletic department, and cheerleading program, including cheerleading selection criteria, and (2) financial records of all high school activities and athletics, including the cheerleading program. Berry seeks a declaration of the district's failures and an injunction requiring the school to produce the records he requested. Defendants argue that Berry's complaint lacks sufficient factual pleadings to establish that the correct custodian actually received his request.

Having determined that Berry's federal claims are not cognizable, the Court declines to exercise supplemental jurisdiction over this state law claim. *Gibson v. Weber*, 431 F.3d 339, 342 (8th Cir. 2005) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed."). The Court will dismiss this count without prejudice to refiling in state court.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for judgment on the pleadings is **GRANTED**. (Doc. 39). Counts I through VI are dismissed with prejudice. Count VII is dismissed without prejudice to refiling in state court.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

Dated this 3rd day of November 2025.

_John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE